**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

**CRIMINAL ACTION NO. 1:06-CR-60**

UNITED STATES OF AMERICA                                                        PLAINTIFF

V.

LONNIE FREEMAN                                                                          DEFENDANT

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court upon a motion to suppress the physical and testimonial evidence obtained as a result of the Defendant's detention and the search of his vehicle on March 28, 2006. [DN 14]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's motion to suppress is **DENIED**.

**I. FACTS**

On March 28, 2006, Kentucky State Trooper Tim Adams and several other officers went to the home of the Defendant, Lonnie Freeman, to conduct a drug investigation. The Defendant was not home, but the officers observed what they believed to be "meth precursors" on his property. One officer went to the courthouse to seek a search warrant, while Trooper Adams, Trooper Jeremy Smith, and Deputy Sheriff Greg Kinslow went to the nearby farm of Richard Mattingly, where the Defendant was working, to ask him to return with them to his residence.

The three officers arrived at Mattingly's farm in uniform and asked the Defendant if he would accompany them back to his home. The Defendant agreed. Because the officers knew that the Defendant carried guns, they asked him if they could search his truck before he drove it home. The Defendant said no and became upset. At that point, Trooper Adams testified that because the officers knew of the Defendant's tendency to carry weapons and for violence, they handcuffed the Defendant for the safety of everyone involved. The officers then told him that if he did not consent to the search they would have his truck included on the search warrant they were already obtaining for his home. According to Trooper

Adams, after he threatened to get a warrant, the Defendant consented to the search and told him there was a "sawed-off shotgun" in the truck.

The officers then searched the Defendant's truck and found the gun. The Defendant was indicted by a federal grand jury on December 6, 2006, for possession of an unregistered short-barreled shotgun and for possession of a firearm by a convicted felon. He filed this motion to suppress on October 22, 2007, and the Court conducted an evidentiary hearing on December 3, 2007.

## II. ANALYSIS

The Defendant argues that the evidence obtained as a result of his detention and the warrantless search of his truck should be suppressed because he was in custody at the time he consented to the search and because his statements were obtained in violation of his Miranda rights. The Court will consider each of these arguments in turn.

### A. Consent to Search

The Defendant argues that the statements he made to the officers while he was handcuffed should be suppressed because they were obtained in violation of his Miranda rights. In Miranda v. Arizona, the Supreme Court ruled that suspects cannot be subjected to a custodial interrogation until they have been advised of their Fifth Amendment right against self-incrimination. 384 U.S. 436, 478-479 (1966); United States v. Salvo, 133 F.3d 943, 948(6th Cir. 1998). Thus, statements elicited from suspects in custody cannot be admitted at trial unless the suspect was advised of his Miranda rights. Salvo, 133 F.3d at 948 (citing Stansbury v. California, 511 U.S. 318, 322 (1994)). Miranda's rule, however, is limited to "custodial interrogations," which the Supreme Court has defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." Id. (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977).

The Court, however, need not decide whether the Defendant was in police "custody" since the Court finds that the Defendant was not subjected to an "interrogation." Because "police...cannot be held

2

accountable for the unforeseeable results of their words or action...the definition of interrogation...extend[s] only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 302 (1980). Thus, the Sixth Circuit has held that an officer's request to search a defendant's automobile does not constitute an "interrogation" which would invoke a defendant's <u>Miranda</u> rights. <u>United States v. Kellogg</u>, 202 Fed. Appx. 96, 103 (6th Cir. 2006). This is because officers could only reasonably expect such a request would "elicit anything more than a 'yes' or 'no,'" which by itself would not have been an incriminating statement." <u>Id</u>. Here, the officers did not ask the Defendant what was in his truck, they merely asked the Defendant for permission to search his truck and, when he refused, they told him that they could have his truck included in the search warrant that was being obtained for his home. The Court does not believe that the officers could have reasonably expected that this exchange, even with the mention a search warrant, was reasonably likely to elicit an incriminating response.

Thus, the Court holds that the Defendant's statements need not excluded, even if he was in custody, since it was not made in response to an interrogation.[1]

**B. Search and Seizure**

The Defendant also argues that the evidence seized from the truck should be suppressed because the Defendant did not voluntarily consent to the search of the truck. The Defendant argues that his consent was not voluntary because it was given only after he twice refused their request and then handcuffed and told that, even if he refused, the truck could be included in the search warrant already

---

[1]At times, the Defendant also seems to argue that his consent was ineffective because it was given after he was illegally detained - i.e., handcuffed by Trooper Adams. The Defendant, however, never expands upon this argument and the Government asserts that the Defendant was placed in handcuffs for the safety of the officers after he became agitated about the possibility that his truck would be searched. The officers testified that at the time they patted the Defendant down and placed in handcuffs because of his disturbed state, they knew that he had a reputation for violence and for carrying weapons. The Sixth Circuit has recognized that officers may place a suspect they have detained for investigative purposes under <u>Terry</u> in handcuffs where reasonably required "to protect officers in potentially dangerous situations." <u>United States v. Walker</u>, 1995 U.S. App. LEXIS 7556 (6th Cir. 1995); see also <u>United States v. Powell</u>, 2000 U.S. App. LEXIS 6131 (6th Cir. 2000); <u>United States v. Monhollen</u>, 1998 U.S. App. LEXIS 6041 (6th Cir. 1998).

being obtained for his home.  The Government argues that the Defendant's consent was voluntary and that, in the alternative, the officers had probable cause to search the Defendant's vehicle.

Generally, an officer cannot conduct a warrantless search without probable cause and exigent circumstances or valid consent.  United States v. Palomino, 100 F.3d 446, 450 (6th Cir. 1996) (citing Schnecklnoth v. Bustamonte, 412 U.S. 218, 222 (1973). A consent to search is valid if it is voluntary. Ohio v. Robinette, 519 U.S. 33, 40 (1996).

> Whether a consent to a search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances.  The burden of proving that consent was voluntary is on the government. Consent must be proved by clear and positive testimony, and, to be voluntary it must be unequivocal, specific, and intelligently given, uncontaminated by duress or coercion.

United States v. Erwin, 155 F.3d 818, 824 (6th Cir. 1998).  One factor a court may consider in its "totality of the circumstances" analysis is whether the Defendant knew that he had the right to refuse consent.  Schnecklnoth, 412 U.S. at 227.

The Defendant argues that his consent to search the truck was given under duress or coercion because it was given only after he was handcuffed and told that, if he refused, the truck would simply be included in the search warrant that was already being obtained.[2]  The Sixth Circuit has recognized that even when a defendant is handcuffed at the time he consents to a search, this fact alone does not make his consent involuntary. United States v. Burns, 298 F.3d 523, 541(6th Cir. 2002); see also United States v. Strache, 202 F.3d 980, 986 (7th Cir. 2000). It is also "well-settled" that an officer's statements to the effect that he would obtain a warrant if the defendant did not consent to search "does not taint [the defendant]'s consent." Salvo, 133 F.2d at 954 (citing United States v. Blanco, 844 F.2d 344, 351 (6th Cir.

---

[2]It is not clear whether the Defendant is also arguing that his consent could not have been voluntary because he was in custody. However, in Salvo, the court held that even if the defendant was in custody, "that by itself would not be enough to vitiate an otherwise valid consent to search." 133 F.3d at 953 (citing United States v. Watson, 423 U.S. 411 (1976) for the proposition that "a suspect in police custody could voluntarily consent to a search, inasmuch as under the totality of the circumstances test, custody, standing alone, was insufficient to indicate consent was coerced").

4

1988)).  However, this well-settled rule only applies where the threat to obtain a warrant is not baseless. Id.  Here, the Government has not explained why the officers' threat that they could obtain a warrant to search his vehicle was not "baseless" - that is, the Government has not explained on what grounds the officers could have obtained a warrant to search his vehicle at the time they made the threat since the Defendant had not yet told them that there was a sawed-off shotgun in the truck.  Finally, the Court must consider in its analysis of voluntariness the fact that the Defendant clearly understood that he the right to refuse consent. Indeed, the Defendant apparently twice refused the officer's request for consent and did not acquiesce until the officers threatened him with a search warrant.

Ultimately, the Court concludes that it need not decide whether the Defendant's consent to search the truck was voluntary since the officers had probable cause to search his vehicle once he told them that it contained a sawed-off shotgun. "[I]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment...permits police to search the vehicle without more." United States v. Haynes, 301 F.3d 669, 677 (6th Cir. 2002)(quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)). Further, even if a car is not readily mobile, "the lesser expectation of privacy in automobiles is an accepted justification for searching without a warrant, provided that there is probable cause." Id. at 678.  The Sixth Circuit has held that although a properly registered sawed-off shotgun is not contraband, because so few sawed-off shotguns are registered, officers who become aware of an individual's possession of a sawed-ff shotgun have probable cause to believe that the weapon is illegally-possessed contraband. See, e.g., United States v. Wade, 30 Fed. Appx. 368, 372 (6th Cir. 2002)(citing United States v. Truitt, 521 F.2d 1174, 1177 (6th Cir. 1975); Porter v. United States, 335 F.2d 602, 607 (9th Cir. 1964)).

Thus, the Court concludes that the evidence found in the Defendant's truck should not be suppressed because the officers had probable cause to conduct a warrantless search of the vehicle after the Defendant revealed that there was a sawed-off shotgun therein.

### III. CONCLUSION

For the foregoing reasons, the Defendant's motion to suppress is **DENIED**. **IT IS SO ORDERED**.

cc: Counsel of Record